# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### BEAUFORT DIVISION

| | |
|---|---|
| Paul Hamilton, Jr., and Louise Hamilton, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Ocwen Loan Servicing, LLC, ) <br> Argent Mortgage Company, LLC, ) <br> Foremost Insurance, Litton Loan ) <br> Servicing, LP, and ) <br> All Unknown Persons to include, ) <br> Trusts, Corporations, Limited Liability ) <br> Companies, Limited Partnerships, ) <br> Partnerships or other business entities who ) <br> are, or who might claim to have some ) <br> interest in, some claim against, or to ) <br> being an heir-at-law of any of those ) <br> persons who are deceased or unknown ) <br> being collectively designated herein as ) <br> John Doe and Mary Roe, including ) <br> Any Unknown Persons in Armed Forces ) <br> of the United States of America, ) <br> including but not limited to any minors, ) <br> persons non compos mentis and persons ) <br> under disability of any kind or nature who ) <br> might claim to be an heir-at-law of any of ) <br> the persons named above, ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No.: 9:12-cv-03111-PMD <br><br><br> **ORDER** |

This matter is before the Court upon Plaintiffs' Motion to Remand pursuant to 28 U.S.C. § 1447. Plaintiffs argue that the amount in controversy requirement of 28 U.S.C. § 1332 is not met, and therefore, the Court lacks subject matter jurisdiction. For the reasons that follow, the Court grants Plaintiffs' Motion to Remand.

1

**BACKGROUND/PROCEDURAL HISTORY**

Plaintiffs own property (the "Property") in Beaufort County, South Carolina. On or about March 2, 2005, Plaintiffs executed a Note with Defendant Argent Mortgage Company, LLC ("Argent") that was secured by a mortgage agreement for their Property. Defendant Litton Loan Servicing, LLC ("Litton") serviced Plaintiffs' loan from inception until it notified Plaintiffs, sometime after August 15, 2011, that effective September 1, 2011, Defendant Ocwen Loan Servicing, LLC ("Ocwen") would be the servicer of the loan moving forward. Plaintiffs obtained a hazard insurance policy with Defendant Foremost Insurance ("Foremost"). On June 13, 2011, the Property was destroyed by fire, and on July 11, 2011, Foremost issued a check for $46,575.00—the total amount of insurance available under the policy. The check was made payable to both Plaintiffs and Litton.

Plaintiffs filed this action on March 5, 2012 in the Court of Common Pleas for Beaufort County, South Carolina. Plaintiffs first allege a cause of action against Argent, Litton, and Ocwen to quiet title of the subject Property in the name of Plaintiffs and to preclude Defendants from having any interest in the Property. For a second cause of action, Plaintiffs allege that Defendant Litton breached its fiduciary duty by inducing Plaintiffs to reduce the amount of hazard insurance coverage to an amount insufficient to pay off the mortgage if a loss were sustained. Plaintiffs contend that they have suffered damages, "but not in excess of Seventy Five Thousand Dollars," and in their prayer for judgment, they seek both actual and punitive damages. Compl. ¶ 23. Next, Plaintiffs seek an accounting as to Defendants Argent, Litton, Ocwen, and any Unknown Persons (hereinafter called "Defendant John Doe") to determine which Defendants financed the Note and received and benefitted from Plaintiffs' payments. Plaintiffs seek "actual damages, and the costs and disbursement of this action to include the cost

of the accounting." Compl. ¶ 37.  For a fourth cause of action, Plaintiffs seek a declaratory judgment determining the interests of the parties in the $46,575.00 check and to require that Foremost pay the funds to the Clerk of Court of Common Pleas for Beaufort County.[1] Both Plaintiffs' fifth cause of action, against Defendant Litton, and sixth cause of action, against Defendant Ocwen, allege negligent mortgage servicing, and as against each Defendant, Plaintiffs seek "actual and punitive damages, and the costs and disbursements of this action in an amount not to exceed Seventy Five Thousand Dollars and No/100 ($75,000) Dollars." Compl. pp. 9, 10. In the seventh cause of action, against Defendant Ocwen, Plaintiffs allege negligent hiring, training and supervision and seek both "actual and punitive damages, and the costs and disbursements of this action, in an amount not to exceed Seventy Five Thousand and No/100 ($75,000) Dollars."  Compl. p 12. Plaintiffs then allege violations of the South Carolina Unfair Trade Practices Act ("SCUTPA") as to Defendants Argent, Litton, and Ocwen, and seek "actual and punitive damages against these Defendants in such amounts as are set by and [sic] jury and/or by the Court in accordance with the statutes of this state, for attorney fees and costs, in an amount not to exceed Seventy Five Thousand Dollars and No/100 ($75,000) Dollars." Compl. p. 13.  Lastly,[2] as to Defendant Ocwen, Plaintiffs again allege violations of the SCUTPA. The Court notes that it appears a prayer for judgment as to this cause of action was accidently omitted as it is the only claim without this concluding sentence stating Plaintiffs' prayer for relief. *See* Compl. pp. 14, 15.

---

[1] In an Order dated September 30, 2012, state court Judge Carmen Millen ordered Defendant Foremost to deposit the policy proceeds into the Clerk of Courts for Beaufort County within thirty (30) days of the date of her Order and further dismissed without prejudice the cause of action against Foremost. *See* [Doc. 1] Attachment 1 (State Court Documents).

[2] Although the Complaint labels this cause of action the "Eighth Cause of Action," it is in fact the ninth and final cause of action asserted by Plaintiffs.

While this case was pending in state court, Defendants sought Plaintiffs' stipulation to maximum damages of $75,000.00 through the following requests for admissions:

### Requests for Admissions

1. Admit that you will not seek to amend the Complaint in this matter to seek damages in excess of $75,000, exclusive of interest and costs, against any Defendant.

   **RESPONSE: The Plaintiffs object as the request does not conform to Rule 36, SCRCP. It does not request the admission of a fact or the genuineness of a document, but rather some future occurrence which may or may not occur.**

2. Admit that you will not under any circumstance execute on any judgment or judgments rendered in your favor against any defendant in excess of $75,000, exclusive of interest and costs.

   **RESPONSE: [Same as above]**

3. Admit that you waive any claim in excess of $75,000, exclusive of interest and costs, in connection with all of the claims asserted in this matter against any Defendant.

   **RESPONSE: [Same as above]**

4. Admit that you are not seeking and shall not seek punitive damages in excess of $75,000 against any Defendant.

   **RESPONSE: The Plaintiffs admit that the pleadings do not seek punitive damages in excess of $75,000 against any Defendant. The Plaintiffs object to the balance of the Request as the request does not conform to Rule 36, SCRCP. It does not request the admission of a fact or the genuineness of a document, but rather some future occurrence which may or may not occur. The Plaintiffs further object on the grounds that the Request contains more than one request.**

5. Admit that you will never urge the trier of fact to award damages, including compensatory and punitive damages, in this matter in an amount in excess of $75,000, exclusive of interest and costs, against any Defendant.

   **RESPONSE: The Plaintiffs object as the request does not conform to Rule 36, SCRCP. It does not request the admission of a fact or the genuineness of a document, but rather some future occurrence which may or may not occur.**

**[Questions 6 – 13 omitted]**

14. Admit that in the event of a verdict in excess of $75,000 against any Defendant, You and Your attorneys agree and stipulate that any such judgment will be satisfied and canceled upon payment of $75,000.

**RESPONSE: [same as above]. The Plaintiffs further object that the Request seeks a stipulation and not a request.**

On October 26, 2012, within thirty days of receiving these responses, Defendants Ocwen and Litton[3] removed the case to this Court. On November 7, 2012, Plaintiffs filed their motion to remand, to which Defendants responded on November 26, 2012.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction. *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc), *abrogated on other grounds by* 28 U.S.C. § 1446(b)(2)(B). The burden of demonstrating jurisdiction resides with "the party seeking removal." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (citing *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994)). The court is obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Section 1447(c) of the United States Code provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Dixon*, 369 F.3d at 816.

## DISCUSSION

Plaintiffs assert that remand is necessary because the amount in controversy requirement for diversity jurisdiction is unsatisfied. Plaintiffs insist that they acted in good faith when requesting damages not to exceed $75,000.00 in the Complaint, considering that the insurance proceeds are $46,575.00. Plaintiffs argue that Defendants have failed to show that the amount in

---

[3] Defendant Argent joined and consented to removal the same day.

5

controversy exceeds the jurisdictional limit because the only grounds upon which Defendants have removed this case are Plaintiffs' responses to Defendants' improper requests to admit.

Defendants contend that removal is proper because Plaintiffs' attempt to limit damages in the Complaint was done in bad faith to avoid federal jurisdiction as evidenced by Plaintiffs' discovery responses and the Complaint itself. Defendants urge the Court to follow the "preferred approach" and hold that Plaintiffs' refusal to stipulate to damages is itself evidence of bad faith.[4]

The Supreme Court has interpreted 28 U.S.C. § 1441(a) to require that a "case be fit for federal adjudication at the time [a] removal petition is filed." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996). This means that federal district courts must possess original jurisdiction over a case at the time of removal. *Rota v. Consolidation Coal Co.,* No. 98–1807, 1999 WL 183873, at *1 (4th Cir. Apr. 5, 1999) ("[J]urisdiction is determined as of the time of removal . . . ."). Accordingly, it is well settled that when a defendant bases removal on diversity jurisdiction, the amount in controversy is determined at the time of removal. 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3702.4, at 457–61 (4th ed. 2011). In making this determination, the amount claimed by the plaintiff in his complaint controls unless the claim is made in bad faith. *See id.* § 3702, at 322 ("Under well-settled principles of pleading, the plaintiff is the master of the statement of his claim. Thus, . . . as the judicial precedents make clear, if the plaintiff chooses to ask for less than the jurisdictional amount in a state court complaint, absent a showing of bad faith[,] only the sum actually demanded is in controversy even though the pleader's motivation is to defeat removal.").

---

[4] In its Response in Opposition, Defendants ask the Court to separate and then aggregate just those claims Plaintiffs assert against Defendant Ocwen to reach the jurisdictional minimum requirement. Because the Court declines such an invitation to aggregate these claims, this issue will not be discussed further.

The United States Court of Appeals for the Fifth Circuit has recognized that plaintiffs act in bad faith when they engage in jurisdictional manipulation by "plead[ing] for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995). To prevent such abuse, the Fifth Circuit has held that "if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount," the burden shifts to the plaintiff to demonstrate to a legal certainty that he "will not be able to recover more than the damages for which he has prayed in the state court complaint." *Id.* at 1411. This standard requires the defendant to prove "by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount," which involves "more than point[ing] to a state law that might allow the plaintiff to recover more than what is pled." *Id.* at 1412 (emphasis omitted). If the defendant is able to make this showing, the Fifth Circuit noted that plaintiffs could satisfy their "legal certainty" obligation by pointing to a statute limiting their damages to what they claimed in their complaints or, in the absence of such a statute, by "'fil[ing] a binding stipulation or affidavit with their complaints.'" *Id.* (quoting *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir. 1992)) (per curiam).

A United States District Judge in the Southern District of Mississippi has determined that defendants may satisfy their burden of proving that the amount in controversy exceeds $75,000 through the use of interrogatories and requests to admit. *Draper v. U.S. Fid. & Guar. Co.*, No. 3:00-cv-70-BN, 2000 WL 268565, at *2-3 (S.D. Miss. Mar. 8, 2000). He outlined what he coined the "preferred approach," which provides the following:

> When a plaintiff has pleaded damages below $75,000 and defense counsel believes that the damages are in excess of $75,000, the defendant can have the case properly removed by utilizing state court discovery procedures. Specifically, the defense lawyer can

7

> have the plaintiff admit through a deposition, an interrogatory, or a request for admission that his damages do not exceed $75,000. If the plaintiff denies this request, the case can be removed and this discovery response should be filed in the record. This discovery response will constitute "other paper" that affirmatively shows that the jurisdictional amount may be satisfied.

*McLain v. Am. Int'l Recovery, Inc.*, 1 F. Supp. 2d 628, 631 (S.D. Miss. 1998) (citation omitted). Following his adoption of the preferred approach, the Fifth Circuit decided *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003), holding that "forum manipulation justifies application of an equitable exception" to the one-year limitation for removal in 28 U.S.C. § 1446(b). *Id.* at 427. This led the district judge in Mississippi to note that "the application of the 'Preferred Approach' is somewhat tempered by *Tedford*." *Wilbanks v. N. Am. Coal Corp.*, 334 F. Supp. 2d 921, 926 (S.D. Miss. 2004). He recognized that *Tedford* now allows defendants to utilize the equitable exception to § 1446(b) if plaintiffs engage in jurisdictional manipulation by amending their complaints after the time for removal has passed. *Lee v. State Farm Mut. Auto. Ins. Co.*, 360 F. Supp. 2d 825, 832 (S.D. Miss. 2005); *Wilbanks*, 334 F. Supp. 2d at 926–28.

Although the decisions of the Fifth Circuit and the Mississippi district court do not bind this Court, their sustained reasoning merits serious consideration. Further, as noted by Defendants in the instant case, the United States Court of Appeals for the Fourth Circuit has in fact cited the Fifth Circuit's decision in *De Aguilar* favorably in an unpublished opinion. *See Aikens v. Microsoft Corp.*, No. 05–1013, 2005 WL 3439552, at *4 (4th Cir. Dec. 15, 2005). However, the Court notes that, to date, the Fourth Circuit has yet to adopt the "preferred approach" and has declined to recognize an equitable exception to the one-year limitations period in 28 U.S.C. § 1446(b). *See Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997) (noting that § 1446(b) erects an "absolute bar" to the removal of diversity cases one year after their commencement).

The Court finds this case closely analogous to another case decided by one of its sister courts, *Bell v. Qwest Commc'ns Int'l, Inc.*, No. 8:11-00037, 2011 WL 2601566 (D.S.C. June 30, 2011), and agrees with the *Bell* court that a "Plaintiff's refusal to stipulate to maximum damages less than the jurisdiction amount does not necessarily indicate bad faith." *Id.* at *5. *See also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (finding that a plaintiff may seek less than the jurisdictional amount to litigate their case in state court). As noted in that case, there are many reasons why a plaintiff "may resist forfeiting their ability to amend to seek or accept more than the jurisdictional amount, despite believing in good faith that their claim does not exceed $75,000." *Bell*, 2011 WL 2601566, at *5. It is no secret that a case will continue to evolve as it moves through discovery, thus, "[r]equiring [P]laintiffs at the outset of litigation to enter into a binding stipulation regarding damages could seriously handicap them as the case progresses." *Id.* Therefore, the Court concludes, just as the *Bell* court did, that "it is understandable that, despite believing in good faith that their claims do not exceed the jurisdictional amount, many plaintiffs would decline to enter into such a binding stipulation." *Id.* It is for these reasons that the Court finds, without more evidence demonstrating bad faith on the part of the Plaintiffs in the case, Defendants have failed to show that Plaintiffs' damages will exceed $75,000.00.[5]

---

[5] The Court believes that the preferred approach constitutes an aggressive exercise of removal jurisdiction, which the Fourth Circuit has counseled against. *See Bell*, 2011 WL 2601566, at *5; *Barbour*, 640 F.3d at 605. The Court acknowledges the Defendants' position and warrants against jurisdictional manipulation; however, the Court must have more before it demonstrating that the claims exceed $75,000.00 to divest the state court of jurisdiction. *See also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096-97 (11th Cir. 1994) (expressing concern over expanding removal jurisdiction to instances where "anytime a plaintiff sued for less than the jurisdictional amount but there remained even a possibility that she would amend her claim or be awarded more than she pleaded").

9

In its Response in Opposition, Defendants also argue that Plaintiffs' request for punitive damages satisfies the jurisdictional minimum. Defendants rely on *Woodward v. Newcourt Commercial Finance Corp.*, 60 F. Supp. 2d 530 (D.S.C. 1999). However, unlike the complaint in *Woodward*, Plaintiffs' Complaint specifically prays for actual damages and for certain causes of action, for both actual and punitive damages—in an amount not to exceed $75,000.00. *See* Compl. ¶ 23, pp. 9, 10, 12, 13; *see also Richardson v. BP Am., Inc.*, No. 2:09-0945-PMD, 2009 WL 3060389 (D.S.C. Sept. 24, 2009) (remanding where plaintiff's complaint expressly represented to the court that she is seeking less than the jurisdictional limits). Generally, a plaintiff is the master of his complaint and may "resort to the expedient of suing for less than the jurisdictional amount . . . though he would be justly entitled to more" in order to avoid federal jurisdiction. *St. Paul Mercury Indem. Co.*, 303 U.S. at 294; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith."). Despite the fact that the Complaint clearly limits the amount in controversy, Defendants contend that the jurisdictional amount has been met because "[p]unitive damages alone, for any cause of action, could satisfy the amount in controversy." Defs.' Resp. 8. The Court disagrees.

Plaintiffs have alleged an indeterminate amount of damages; therefore, the Court must attempt to ascertain the amount in controversy based on the evidence in the record at the time of removal. *Crosby v. CVS Pharmacy, Inc*, 409 F. Supp. 2d 665, 667 (D.S.C. 2005). The Court is well aware that both actual and punitive damages must be included in any calculation of the amount in controversy. *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 64 S.Ct. 5 (1948). Further, in making such a determination, the "court is not required to leave its common sense behind." *Crosby*, 409 F. Supp. at 668 (citing *White v. J.C. Penney Life Ins. Co.*, 861 F.

Supp. 25, 27 (S.D.W.Va. 1994)). However, it is the Defendants' burden, as the removing party, to "produce evidence that establishes that the actual amount in controversy exceeds $[75],000." *Crosby*, 409 F. Supp. 2d at 667 (citing *De Aquilar*, 47 F.3d at 1412 (5th Cir. 1995)). It is not enough to simply state that because Plaintiffs seek punitive damages for some of their claims, federal jurisdiction is proper. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("[T]he possibility that plaintiff may in the future seek or recover more damages is insufficient to support federal jurisdiction now."). Furthermore, this Court agrees with its sister court that "it was never the intent of Congress for the federal courts to exercise jurisdiction over every state case in which punitive damages have been pled and the parties are of diverse citizenship." *Hagood v. Electrolux Home Prods., Inc.*, No. 8:06-1799-HFF, 2006 WL 1663804, at *2 (D.S.C. June 15, 2006).

Plaintiffs seek actual and punitive damages as to their second cause of against Defendant Litton for breach of fiduciary duty.[6] Plaintiffs allege that Litton induced them to reduce the amount of hazard insurance coverage to an amount insufficient to pay off their mortgage in the event of a total loss. At the time of the loss to their home, Plaintiffs still owed approximately $85,000.00 on their mortgage. Thus, the actual damages Plaintiffs have suffered from Litton's alleged breach would be the difference between the amount still owing on the mortgage ($85,000.00) and the amount of the insurance policy ($46,575.00), which is $38,525.00. This amount—the true amount in controversy—is well below the jurisdictional limit and, for the

---

[6] The Court notes that it has been given limited information regarding potential actual damages under causes of actions five through nine (the other claims wherein Plaintiffs seek punitive damages). Therefore, the Court declines to make an independent appraisal of the monetary value of each claim especially in light of the Plaintiffs' good faith representation to the Court that they are seeking actual and punitive damages in an amount not to exceed $75,000.00 as to each of these claims. *See Hagood v. Electrolux Home Prods., Inc.*, No. 8:06-1799-HFF, 2006 WL 1663804, at *2 (D.S.C. June 15, 2006) (declining to make an independent appraisal of the monetary value of plaintiff's claims).

reasons just noted, Plaintiffs' request for punitive damages alone does not show that the jurisdictional minimum has been met. *See Hagood*, 2006 WL 1663804, at *2 ("[J]urisdiction cannot rest upon the metaphysical possibility that the jurisdictional amount may or may not be met now or at some point in the future.").

After a careful review of Defendants' Notice of Removal and Response in Opposition, the Court finds no evidence demonstrating that it has diversity jurisdiction over this case. Because Defendants have not presented a sufficient factual basis for the Court to make an informed decision as to whether Plaintiffs can or cannot recover damages in excess of $75,000.00, Defendants have failed to bear its burden and the Court cannot conclude with certainty that removal is proper. *See Barbour v. Int'l Union*, 640 F.3d 559, 605 (4th Cir. 2011) ("Doubts about the propriety of removal should be resolved in favor of remanding the case to state court."). "Allowing removal under a less stringent standard would allow removal in almost any case in which a plaintiff seeks punitive damages, thus effectively eviscerating the amount in controversy requirement." *Crosby*, 409 F. Supp. 2d at 667; *Spann v. Style Crest Prods., Inc.*, 171 F. Supp. 2d 605, 610 (D.S.C. 2001). Accordingly, the case must be remanded.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion to Remand is **GRANTED**.

AND IT IS SO ORDERED.

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**February 7, 2013**
**Charleston, SC**

12